IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
12/27/2022
U.S. DISTRICT COURT
Northern District of WV

**Local 698-C of the International
Chemical Workers Union Council
of the United Food & Commercial Workers,**

      **Plaintiff,**

v.

**Momentive Performance Materials, L.L.C.**

      **Defendant.**

Civil Action No. 5:22-cv-317

Judge Bailey

## COMPLAINT TO ORDER ARBITRATION

Comes Plaintiff, Local 698-C of the International Chemical Workers Union Council of the United Food and Commercial Workers ("Union" and/or "Plaintiff"), which alleges the following against the Defendant, Momentive Performance Materials, USA, LLC ("Company")

1. This action is brought under Section 301 of the Labor Management Relations Act of 1947 (LMRA), *29 U.S.C. 185(a)*.

## VENUE AND PARTIES

2. The Company manufactures chemicals and operates a facility in Sistersville, WV. At all times relevant to this action, the Company acted as an employer engaged in an industry affecting commerce as defined in the LMRA, *29 USC 142, et seq*.

3. The Plaintiff Union a labor organization with members employed in Sistersville, West Virginia.

4. This Court therefore has jurisdiction over the parties and venue in this Court is appropriate.

## FACTS

5. The Union serves as the collective bargaining representative of a bargaining unit of certain employees of the Company at its facility in Sistersville, West Virginia.

6. The Union and the Company are parties to a Collective Bargaining Agreement ("CBA"), effective by its printed terms from July 27, 2018 to July 28, 2021, and extended from time to time thereafter until July, 2024. Plaintiff attaches a true and correct copy of the CBA and incorporates it herewith as Exhibit A.

7. The CBA contains an arbitration clause or clauses.

8. The CBA Section entitled "Adjustment of Grievances" refers to grievances as relating to "[a]ny difference between the Company and its employees…" Exhibit A, Art. XIX, p. 39

9. That same Section states in part,

> [a]ny grievance which remains unsettled after having been fully processed through Step three of the grievance procedure or mediation, and which involves either, (a) the interpretation or application of a provision of the Agreement…(c)… may be submitted to arbitration upon written request of either the Union or the Company …"

*Id.,* at p. 41

10. That same CBA Section also states in part,

> 4(a) Arbitration as a matter of right includes only requests to arbitrate which involve…*(ii)*The claimed violation of a specific provision or provisions of this Agreement (with the limitations and exceptions set out in this Article);
>
> (b) A request for arbitration, in order to be subject to arbitration as a matter of right under the provision of Subsection (a(ii) above, must allege a direct violation of the express purpose of the contractual provision in question, rather than of an indirect or implied purpose

*Id.,* at pp. 42-43

11. Grievance No. 2022-27 (the Grievance) states in part:

> On 3-3-22 the company assigned scheduled work to 12 hour shift mech. On R-99 Seal. Work that is scheduled past 3:30 PM is mech Day workers where the contract contains an arbitration clause, there is a presumption of arbitrability."[26] The Supreme Court has instructed that the presumption applies "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."[27]overtime work. 12-hour shift workers are here for breakdown past 3:30 PM per past practice.

The Grievance, attached hereto and incorporated herewith as Ex. B.

12. A Letter of Agreement into which the parties entered in 2007, entitled "Twelve Hour Shift Policy," covers the Grievance. The CBA booklet contains this at pp. 80-84, Exhibit B.

13. Two additional Letters of Agreement, into which the parties entered, cover the Grievance. Plaintiff attaches one, from 2010, as Exhibit C and the other as Ex D, containing the date of March 14, 2011, and incorporates both herewith.

14. Exhibit C is the Maintenance Optimization Shift Administration Letter of agreement. Ex D is the Maintenance 12 Hour Shift Overtime Guidelines

15. The Grievance concerns an issue on its face within the purview of the arbitration clause, set forth *supra* at Pars. 8, 9, and 10, yet the Company has refused to participate in the arbitration process, despite the Union's demand.

16. The Maintenance Optimization Regarding Shift Admin Letter Agreement refers to specific times "by which overtime opportunities are identified." Ex C, unnumbered Par 4.

17. The 3:30 pm time, referred to in the Maintenance Optimization Regarding Shift Admin Letter Agreement, and the 3:30 time, referenced in the Maintenance 12

Hour Shift Overtime Guidelines, unnumbered par 2, relate to when the overtime starts for day workers.

18. The 7:00 pm time, referred to in Ex C, at unnumbered par 4 involves when overtime starts for "12 hour maintenance" employees, as referred to in the Grievance, Ex B.

19. Regarding the "change" represented by Exhibits C and D, the Company is also violating Art XXIV of the CBA.

20. The CBA states that the parties, including the Company agreed "to make every effort to represent with honest and forthrightness the change of contract language agreed to at the bargaining table." CBA, Exhibit. A, Art. XXIV, 24.01 ¶1 at p. 45

21. The Company's current position and statements failed to represent with honesty and forthrightness the "change" represented by Exhibits C and D

22. In addition, the Company has violated Art XXIV, 24.01 ¶ 3 since it agreed "[t]o deter any and all who would attempt to use the language of this bargaining agreement as a means of harm to the relationship between the Union and Company." Exhibit A at p. 46.

23. The CBA at Art XXIV, 24.01 ¶4, repeats and therefore stresses the importance of the "relationship between the Union and the Company" in that the parties, including the Company, agreed "[t]o do our utmost to ensure that no member of our respective groups would do anything to negatively affect the attitude of plant employees or the relationship between the Union and Company." Exhibit A at p. 46.

24. The actions by the Company as aforesaid have also violated Art. XXIV, 24.01 ¶4 at p. 46.

25. The Grievance, at Adjustment Desired, seeks "[p]ay day worker bypassed time & half all hrs. worked and stop harming the Union/Company Relationship," consistent with the mandate in Art. XXI, ¶3, Exhibit A, p. 6.

26. The Union has filed approximately one hundred thirty (130) grievances that address the Company's improperly scheduling 12-hour maintenance and taking overtime from 8-hour workers.

27. While the Letter of Agreement – Maintenance 12 Hour Shift Overtime Guidelines, states that the Company would follow procedure "[c]onsistent with current practice," Exhibit D, unnumbered Paragraphs 2, 3, and 7, the Company implemented and forced a change beyond what was the consistent past practice of the parties regarding the assignment of overtime to maintenance workers.

COUNT 1- ACTION TO FORCE ARBITRATION
**(Pursuant to 29 U.S.C.  Section 1895(a))**

28. The Union repeats, re-alleges and incorporates Paragraphs 1 through 27 of this Complaint as if set forth fully herein.

29. The issue stated in Grievance 2022-27, Exhibit A, is covered by the arbitration clause as a dispute that the parties committed to arbitration.

30. The Company's actions refusing to participate in arbitration, runs contrary to the CBA between the parties and the LMRA.

WHEREFORE, the Union respectfully requests that the Court order that the Company submit the grievance to, and that the Company participate in, arbitration and issue such other and further relief as it may determine is just and proper.

          Respectfully submitted,

          **Local 698-C of the International**
          **Chemical Workers Union Council**
          **of the United Food & Commercial**
          **Workers, Plaintiff**


          By: /s/Timothy F. Cogan
                Of Counsel

Timothy F. Cogan, Esq.
(WV Atty. No. 764)
CASSIDY COGAN
SHAPELL & VOEGELIN, L.C.
1413 Eoff Street
Wheeling WV 26003
Telephone:  (304) 232-8100
Fax:  (304) 232-8200
tfc@walslaw.com